## CUMMINGS v. SCOTT.
### No. 68-9241.
Circuit Court, Duval County.

March 20, 1969.

Eugene Loftin, Jacksonville, for plaintiff.

Lacy Mahon, Jr., Jacksonville, for defendant.

FRANK H. ELMORE, Circuit Judge.

*Opinion and order denying motions for new trial and setting aside final judgment for entry of new judgment enlarging damages:* This is a civil action sounding in tort for damages for assault and battery of the plaintiff by the defendant. It was tried before the court, without a jury, on February 26, 1969. Final judgment for the plaintiff awarding damages of $960 and costs was entered on that date. Both parties have timely moved the court to grant a new trial.

By his complaint, plaintiff sought damages, compensatory and punitive, from defendant for assault and battery of his person by wounding him with a deadly weapon. At the trial, defendant admitted shooting plaintiff, but asserted as justification that he was provoked by plaintiff's conduct with his wife.

Judgment for plaintiff was in the amount of his actual out-of-pocket loss only, his claims for damages for pain and suffering and for punitive damages being denied, *sub silentio.*

The nature of the case, in which plaintiff, an admitted adulterer, is awarded damages from the husband; and popular misconception of the law governing such actions and the relief granted thereby, suggest an exposition in the light of applicable authorities. "The cold neutrality of an impartial judge" requires him to make decisions, some difficult, influenced by neither sympathy nor prejudice. In the loneliness of deliberation, guided by his conscience and learning, a judge must follow the law.

"The judicial department has no will in any case . . . Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or in other words, to the will of the law." Chief Justice John Marshall in Osborne v. Bank of the United States, 22 U.S. 738, 7 L.ed. 204.

Lord Mansfield in J. R. v. Wilkes (1770), 4 Burr 2527, 2562-63, 98 English Reports 327, 347, spoke for judges of today, as well as the past, when he said — "I will not do that which my conscience tells me is wrong, upon this occasion, to gain the huzzas of thousands, or the daily praise of all the papers which come from the press; I will not avoid doing what I think is right; though it should draw on me the whole artillery of libels; all that falsehood and malice can invent, or the credulity of a deluded populace can swallow . . . once for all let it be understood, 'that no endeavors of this kind will influence any man who at present sits here.' "

The evidence discloses that defendant's wife was a willing, consenting partner in sexual relations with the plaintiff. About ten liaisons occurred in three months, all at plaintiff's apartment, to which she came alone, voluntarily. According to plaintiff's testimony, she always initiated the meetings, including the final one on the day of defendant's attack on plaintiff. But as to that last meeting, she said he telephoned her to arrange it; nevertheless, she readily agreed and came to him.

Defendant was a trespasser on plaintiff's property. Moreover, by his own admission, he broke a glass pane and entered plaintiff's home armed with a deadly weapon (revolver), intending to discover and confront his wife and her lover together and do them violence. He failed in that endeavor because she had fled. It was then that, lacking proof and with only strong suspicion that she had been there, he shot the plaintiff as he turned his back to him. Plaintiff had not laid a hand on defendant.

No law gave the defendant the right to break and enter the plaintiff's residence. No law gave him the right to commit assault and battery on the body of the plaintiff. That the defendant was provoked by suspicion of his wife's misconduct with plaintiff does not excuse or justify his actions.

6 Am. Jur. 2d, *Assault and battery*, §62. The so-called "unwritten law" which is reflected in the older opinions is now generally rejected. Thus, it has been stated that a husband is not justified in killing, or attempting to kill, another to prevent the seduction or debauching of his wife by artifice or fraud. It is likewise pointed out that in no case can an assault be justified on the ground of defending the chastity of the accused's wife, where the assault did not appear reasonably necessary to prevent a present and impending violation of the wife's chastity, but was made because of a past violation of that nature or to prevent a future attempt to commit it.

[On March 12, 1969, since trial of this action, in another division of this court, a man who was indicted by the grand jury for first degree murder was found guilty of manslaughter, by a jury, in the killing of his wife's paramour. Thus, the so-called "unwritten law" was rejected both by the grand jury which indicted the defendant and by the trial jury which convicted him. State v. Hale.]

§151. In the absence of a statute providing otherwise, mere words or acts that do not amount to an assault, even when spoken or performed for the purpose of provoking an assault, are no defense to a civil action on the ground of assault, although such provocation may have a mitigating effect with regard to the damages to be imposed.

6 C.J.S., *Assault and battery*, §17a. Apart from statute no provocative acts, conduct, former insults, threats, or words, if unaccompanied by any overt act of hostility, will justify an assault, no matter how offensive or

exasperating nor how much they may be calculated to excite or irritate. Under some circumstances, however, such words or acts may be considered in mitigation of damages or punishment, usually in mitigation of punitive damages only, not compensatory or actual damages, provided they are immediately provocative of the assault.

The plaintiff's allegations and proof are that the assault and battery were malicious, unlawful and intentional, thus entitling him to recover punitive damages. The court properly instructed the jury that provocation could not be shown to bar the action but could be considered in mitigation of damages. Miami Transit Co. v. Yellen, S. Ct. Fla. 1945, 22 So. 787.

The reason for the rule is in sound morals and public policy which . . . forbids any man from being his own "judge and executioner". Davis v. Robinson, 179 N. E. 797, 94 Ind. App. 104.

In the case of State v. Young, 96 Pacific 1067, decided by the Supreme Court of Oregon in 1908, the court in its opinion discussed this phase of the law. To emphasize the pertinancy of this authority and because of the similarity in the relationship of husband, wife and paramour in that case to that in this action, there are inserted, parenthetically, following the names in the *Young* case, those of the participants in this case. The Oregon court said —

> Whatever may have been the state of defendant's mind as to a belief that Van Dran (Cummings) was intending or about to commit adultery with Mrs. Young (Mrs. Scott) that night, and whether such belief was well-founded in fact or not, was wholly immaterial, and could in no way aid him in his defense. Mrs. Young (Mrs. Scott) was not present at the time of defendant's assault upon Van Dran (Cummings) and therefore she could not then have been the subject of an assault to commit a felony by the latter, or in imminent danger of one. She was not under duress by Van Dran (Cummings) but, on the contrary, was voluntarily acting in concert with him, for she testifies that she went to the building in response to a telephone message from him. A husband is not justified in killing or attempting to kill another to prevent the seduction or debauching of his wife by artifice or fraud. Clarke & Marshall, Law of Crimes, §288. But, if the adultery is by the consent of the wife, the husband, taking the offender even in the act and killing him, is guilty of manslaughter. Kerr's Law of Homicide, 12; Clarke & Marshall, Law of Crimes, §§260e, 275. "A husband or father may justify killing a man who attempts a rape upon his wife or daughter, but not if he takes them in adultery by consent; for the one is forcible and felonious, but not the other." 4 Blackstone (Lewis' Ed.) 181.

> The defendant requested certain instructions, which were denied. They are too extensive to be set forth here; but it is sufficient to say that they contain the same erroneous theory urged by his counsel for the admission of his testimony, which was rightly rejected. They include the proposition that, because the state makes adultery a felony, if the defendant believed that Van Dran (Cummings) was about to attempt to commit such crime with defendant's wife, and that the accused feared

and had reason to fear, from the acts, language, or demonstration of Van Dran (Cummings), that he was about to carry his design into execution, at or shortly after, the time of the assault, and acting under this apprehension he made the assault, the law would justify him. But, though adultery is a felony under the statute, it is not a felony upon the party intending to voluntarily participate therein. She is particeps criminis, and not one upon whom an assault to commit a felony is being made. Such circumstances, therefore, furnish no basis for a husband to invoke the principle of a necessary assault in defense of his wife. So too, "statutes with reference to homicide, justifiable because committed in defense, relate to transactions occurring in respect to parties present at the time and place of its occurrence, and have no application to a case in which the danger is to an absent person." Wharton on Homicide (3d Ed.) 772. And homicide in defense of the chastity of a wife, to be justifiable, must be to prevent a present, an impending violation thereof, and reasonably necessary to prevent it, not a past offense or future attempt.

The South Carolina case of Terry v. Richardson, 116 S. E. 273, 123 S. C. 319, holding that provocation by plaintiff not amounting to justification cannot be considered to mitigate compensatory damages, explains the reason —

There is much of logical force in the proposition that if malice and wantonness in the defendant are to be punished by the imposition of additional damages, or smart money, then malice and provocation on the part of the plaintiff which contributed to his own injuries should be subject to like punishment by giving him less than the measure of compensation . . . But the view that in a civil action for damages for assault and battery, provocation may not be considered in mitigation of compensatory damages, is herein approved and adopted, not by virtue of the principle of stare decisis, but because we think the rationale of that view is the more logical and the better grounded in sound public policy. If provocation, which does not amount in law to a justification of the assault and battery, may mitigate the damages actually inflicted then it may reduce such damages to a mere nominal sum and thus in effect justify a legal wrong which the law says may not be so defended and justified. If such provocation may justify in part, why not in whole? It is a fundamental principle of the law of torts "that the compensation awarded to one who is injured, either in person or property, by the wrongful and unlawful act of another, shall at least be equivalent to, and should in all cases be commensurate with, the loss or injury actually sustained." "If the law awards damages for an injury, it would seem absurd, even without resorting to the definition of damages, to say that they shall be for a part only of the injury." Such would necessarily be the effect of a rule that would permit that species of provocation "which in law is neither a justification nor a defense, to mitigate and reduce the amount of recovery to a sum less than full compensation." In the ethical view one who perpetrates a legal wrong ought to be responsible for the actual consequences. If one is provoked into taking the law into his own hands, to the extent of the actual damages inflicted thereby, he should be willing to abide the consequences and "to pay the piper."

*It would seem a sufficient concession to human infirmity in succumbing to the passion engendered by insulting words or other provoking*

*conduct that such mitigating circumstances should be allowed to excuse and absolve a defendant from liability for exemplary or punitive damages.* The good of society demands that men should not be encouraged to seek redress of their wrongs outside the pale of the law. A doctrine that would permit the penalty for the law's infraction to be wholly mitigated in a civil action by showing of mere provocation would not only tend in some measure to encourage in such cases the manufacture of evidence of that character, but, by abrogating in effect one of the most firmly established rules of the law, would inevitably tend to countenance and encourage a resort by the individual to strong-arm methods for redressing his private wrongs, real or imaginary. (Italics added.)

As previously stated, the final judgment did not award the plaintiff punitive damages nor damages for pain and suffering. The defendant is excused from assessment of punitive damages for the reason emphasized above, but the amount of the judgment should have included damages for pain and suffering and the omission will be rectified by entry of a new, revised judgment as provided for by Rule 1.530(a), Florida Rules of Civil Procedure. 6 C.J.S., op. cit., supra.

Therefore, based upon the authorities cited and quoted, it is ordered that — (1) The defendant's motion for a new trial is denied. (2) The plaintiff's motion for a new trial is also denied, but the final judgment entered on February 26, 1969, which limited the award of damages to plaintiff's out-of-pocket losses of $960 is opened and set aside for the entry today of a new, revised judgment in the enlarged amount of $4,000, which embraces damages for pain and suffering and out-of-pocket losses.